**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Christopher L. Campbell, II,

    Plaintiff,

v.

Mobile Solution Corporation, *et al.*,

    Defendants.

Case No. 1:07cv1037

Judge Michael R. Barrett

**OPINION & ORDER**

This matter is before the Court upon Plaintiff Christopher Campbell's Motion for Summary Judgment. (Doc. 45) Defendant The Mobile Solution Corporation (TMS) has not filed a response.[1]

**I.**    **BACKGROUND**

On April 19, 2004, Campbell began working for TMS as a sales associate. (Doc. 45-2, Christopher Campbell Decl. ¶ 2.) Campbell is a light-skinned African-American. (Id., ¶ 20.) TMS operated retail stores which sold mobile phones and accessories.[2] TMS promoted Campbell several times over the next eleven months. (Id.) In March 2005, TMS promoted Campbell to the position of Regional Sales Director ("RSD") for the Southern Ohio Market. (Id.) In this position, Campbell's direct supervisor was Robert Smith. (Id.)

When Campbell was promoted to RSD, the Southern Ohio Market was one of

---

[1]On July 17, 2009, the Court granted the Motion to Withdraw filed by TMS's counsel. (Doc. 44.)

[2]On October 2, 2009, The Mobile Solution Corporation filed a voluntary petition for liquidation under Chapter 7 in the US bankruptcy Court for the Southern District of California.

bottom markets for TMS. (Id., ¶ 4.) The Southern Ohio Market included three stores in Columbus, Ohio: Polaris Fashion Place, Columbus City Center, and Tuttle Crossing. (Id.) These stores were consistently unprofitable before Campbell began to manage them. (Id.) In the first month of his management, Campbell was able to increase the sales at Polaris and City Center by over 30 percent. (Id., ¶ 7.) The sales of the Tuttle Crossing store increased by over 48 percent. (Id.) Smith regularly stated that Campbell was doing a great job. (Id., ¶ 9.) Campbell earned significant bonuses based on his performance. (Id., ¶ 10; Ex. B.) Campbell consistently exceeded his monthly goals for profit, phone deactivations, inventory control, and employee management. (Id., ¶¶ 12-14; Ex. B.)

Smith frequently told jokes using the word "nigger" in Campbell's presence. (Id., ¶ 20.) Smith would also refer to African-Americans as "ninjas." (Id.) On July 19, 2005, Campbell told Smith that he found Smith's jokes offensive and asked him to stop making racial jokes. (Id.) Smith responded by making another racial joke. (Id.)

The next week, Campbell noticed that Smith was not sending accessories to Campbell's stores. (Id., ¶ 22.) Campbell asked Smith to send these accessories, but Smith refused. (Id.) Two weeks after Campbell confronted Smith, Smith transferred a top sales performer out of one of Campbell's stores. (Id.) This salesperson was sent to a store which was already fully-staffed. (Id.) Smith started requiring Campbell to travel from Columbus to Cincinnati on a more frequent basis. (Id., ¶ 24.) Smith demoted and transferred one of Campbell's managers out of his most profitable store. (Id., ¶ 25.)

On September 15, 2005, Smith demoted Campbell to the position of Trainer in the Upstate New York Market. (Id., ¶ 26.) The salary of a Trainer was significantly less than that of a RSD. (Id.) In his new position, Campbell was supervised by Patrick Jackson.

(Id.) Jackson was also Smith's supervisor. (Id., ¶ 27.) Campbell complained to Jackson about Smith. (Id.) Jackson became short with Campbell and yelled at him. (Id.)

Campbell requested, and was granted a transfer to the Western New England Market. (Id., ¶ 28) After the transfer, Campbell earned two performance awards. (Id.)

On November 30, 2005, Campbell sent a written complaint about Smith's behavior to his supervisor at the time, Kevin Liu. (Id., ¶ 33.) Liu then forwarded the complaint to TMS's Human Resources Representative, Tiffany Rady. (Id.) Rady spoke to Campbell that day and told him there would be a confidential investigation of his complaint. (Id., ¶ 34.) However, Liu told Jackson about the investigation. (Id.) Smith called one witness in an effort to intimidate him. (Id., ¶ 35.) Rady and Kevin Dehann, Vice President of Human Resources, assured Campbell that this witness would be sent a letter explaining that he could testify without retaliation. (Id., ¶ 36.) However, such a letter was not sent. (Id.)

On December 1, 2005, Dehann told Campbell that he should not return to work during the pendency of the investigation. (Id., ¶ 37.) Campbell was not paid during this time. (Id.) Two weeks later, Dehann told Campbell that he was fired. (Id.)

On March 27, 2007, the EEOC issued a Notice of Right to Sue. Campbell filed this action in the San Diego Superior Court in California, and TMS had it transferred to this Court based upon forum non-conveniens.

In his Amended Complaint, Campbell brings claims of a hostile work environment based on race in violation of Title VII, 42 U.S.C. § 2000, *et seq*. and Ohio law; retaliation in violation of Title VII and Ohio law; and wrongful termination in violation of public policy.

(Doc. 26.)[3]

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). However, "if the non-moving party fails to discharge its that burden-for example, by remaining silent-its opportunity is waived and its case wagered." *Guarino v. Brookfield Tp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992). Nevertheless, where the non-moving party fails to respond to the motion or arguments within the motion, the court is still required to consider all the materials properly before it in order to determine if a genuine issue of material fact exits. *Sanabria v. Germain Motor Co.*, Case No. C2:04-CV-508, 2005 WL 2313950, *2 (S.D. Ohio, Sept. 21, 2005).

---

[3]In his Motion for Summary Judgment, Campbell references a claim pursuant to 28 U.S.C. § 1981. However no such claim was alleged in the Amended Complaint.

### B. Title VII

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

### C. Hostile Work Environment

Title VII prohibits racial harassment that creates a hostile or abusive work environment. *Newman v. Federal Express Corp.*, 266 F.3d 401, 405 (6th Cir. 2001). In order to establish a *prima facie* case of hostile work environment based on race under Title VII, a plaintiff must show: (1) that he or she is a member of a protected class; (2) that he or she was subjected to unwelcome racial harassment; (3) that the harassment was based on race; (4) that the harassment had the effect of unreasonably interfering with his or her work performance by creating an intimidating, hostile, or offensive work environment; and (5) the existence of employer liability. *Id.*, *citing Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999).

Campbell has shown that he is a member of the protected class because he is African-American. Campbell has also shown that he was subjected to unwelcome racial harassment in the form of racial jokes made by Smith and the use of the term "ninjas" to refer to African-Americans. Campbell has shown that the jokes, which included the word "nigger," and the term "ninjas" are based on race.

However, Campbell has not shown that harassment had the effect of unreasonably interfering with this work performance. The performance records submitted by Campbell show that he was able to meet or exceed his performance goals despite the harassment.

Therefore, Campbell has not met this element of the *prima facie* case.

The Court also finds that Campbell has not shown the existence of employer liability. For an employer to be liable for the discriminatory harassment of an employee by a coworker, the harassed employee must show the employer both (1) knew or should have known of the harassment and (2) failed to take prompt and appropriate corrective action. *E.E.O.C. v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 518 (6th Cir. 2001). Campbell did not inform anyone about the harassment until after he was transferred out of his job in the Southern Ohio Market. Once Campbell was no longer under Smith's supervision, the harassment ended.

Therefore, Campbell has not shown that he is entitled to summary judgment on his claim of hostile work environment under Title VII.

### D. Retaliation

Title VII prohibits retaliatory actions against employees who oppose, report or participate in investigations involving conduct that allegedly violates Title VII. *See* 42 U.S.C. § 2000e-3(a). A plaintiff must make out a *prima facie* case of retaliation by establishing that (1) he or she engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action. *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 345 (6th Cir. 2008), *citing Morris v. Oldham County Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000).

Protected activity includes informal or oral complaints. *See Delisle v. Brimfield Twp.*

*Police Dept.*, 2004 WL 445181, *6 (6th Cir. March 8, 2004) (unpublished); *Driggers v. City of Owensboro, Ky.*, 2004 WL 1922182, *10 n.4 (Aug. 24, 2004) (unpublished). Here, Campbell first complained to Smith directly about his racial jokes and comments. Smith was Campbell's supervisor at the time. Next, Campbell informed Jackson, his supervisor and also Smith's supervisor, that Smith was not treating him fairly. Later Campbell complained about Smith's behavior to his then supervisor, Liu, who forwarded the written complaint to Rady in TMS's human resources department. The Court finds that all three of these actions–the verbal complaint to Smith, the verbal complaint to Jackson, and the written complaint which ultimately made its way to the human resources department–are protected activity under Title VII.

Campbell has also shown that TMS knew of the exercise of the protected right because Campbell told his supervisors, Smith, Jackson, and Liu, about Smith's racial jokes and comments, as well as Smith's retaliatory actions after Campbell complained about Smith's behavior.

In the context of a retaliation claim, an adverse action is any action by an employer "that would have been materially adverse to a reasonable employee or job applicant," meaning that the employer action "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). Adverse action is not limited to harms "that are related to employment or occur at the workplace." *Id.* at 57. Campbell has shown that there were several instances of adverse action taken against him. When Campbell complained to Smith, Smith stopped sending Campbell accessories for his store, transferred a top salesperson out of his store, and transferred a manager out of Campbell's most profitable store. These

actions all had an effect on Campbell's ability to meet his performance goals, and therefore were materially adverse. In addition, Smith demoted Campbell to the lower paying position of Trainer. This demotion was a clear adverse employment action. Campbell does not contend, and the Court does not find, that Jackson's yelling at him in response to Campbell's complaints regarding Smith was an adverse employment action. *See Burlington*, 548 U.S. at 68 ("We speak of material adversity because we believe it is important to separate significant from trivial harms."). However, after Campbell made a written complaint to Liu, and that complaint was passed on to the human resources department, Campbell was told to not return to work, and was eventually fired. Being placed on leave without pay and terminated from employment are clearly adverse employment actions.

Campbell has shown a causal connection between Smith's actions and his complaint to Smith about his racial jokes and comments based on temporal proximity. Within weeks of complaining to Smith, Smith stopped sending Campbell accessories for his store, transferred a top salesperson out of his store, and transferred a manager out of Campbell's most profitable store. Less than two months of complaining to Smith, Smith demoted Campbell to the lower-paying Trainer position. "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). The Court finds that the time elapsed between Campbell's complaint to Smith and Smith's retaliatory actions is brief enough to support Campbell's *prima facie* case of retaliation.

Similarly, the day after Campbell submitted his written complaint to Liu, he was put on pay without leave. Within two weeks of making the written complaint, Campbell was terminated. The Court finds that based on the circumstances, this temporal proximity alone supports Campbell's claim of retaliation.

Because Campbell has supported all the elements of a *prima facie* case, the Court finds that Campbell is entitled to summary judgment on his claim for retaliation under Title VII.

**E.      Ohio law**

The Ohio Supreme Court has held that "federal case law interpreting Title VII of the Civil Rights Act of 1964 is generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981).[4] Therefore, the Court finds that Plaintiff has established a violation of Ohio Revised Code § 4112.02(I). Accordingly, Plaintiff is entitled to summary judgment on this claim.

However, this Court has recently concluded that a plaintiff cannot maintain a claim for violation of Ohio public policy in addition to a claim under the ADA. *See Bennett v. Board of Educ. of Washington County Joint Vocational*, 2009 WL 2973001, *3 (S.D.Ohio Sep. 10, 2009) (slip op.). This court concluded that there is "no need to create by judicial fiat further remedies by way of a [wrongful discharge in violation of public policy claim] when the [ADA] provides reasonably satisfactory ones." *Id.*, *quoting Wiles v. Medina Auto*

---

[4] Ohio law prohibits retaliation by an employer against an employee who "has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing" related to the opposition of unlawful discriminatory practices defined in the statute. Ohio Rev. Code § 4112.02(I).

*Parts*, 773 N.E.2d 526, 529-30 (Ohio 2002). The Court finds that the same rationale applies to claims brought under Title VII. Therefore, Campbell is not entitled to summary judgment on this claim.

**F.      Damages and attorney fees**

Campbell seeks an award of back pay. Victorious Title VII plaintiffs are presumptively entitled to back pay until the date judgment is entered in the case. *Shore v. Federal Exp. Corp.*, 777 F.2d 1155, 1159 (6th Cir. 1985). An award of back pay includes the plaintiff's salary, including any raises, which plaintiff would have received but for the discrimination, as well as sick leave, vacation pay, pension benefits and other fringe benefits the plaintiff would have received but for discrimination. *Suggs v. ServiceMaster Educ. Food Management*, 72 F.3d 1228, 1233 (6th Cir. 1996), *citing Gutzwiller v. Fenik*, 860 F.2d 1317, 1333 (6th Cir. 1988). However, "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. § 2000e-5(g)(1).

Campbell states that as a result of his demotion from the RSD position to the Trainer position, he lost $36,410 in salary between September 16, 2005 and December 31, 2005. Campbell found employment which began on January 1, 2006, but he earned less in the new position. Campbell states that he lost $234,460 in salary between January 1, 2006 and November 31, 2007, when he began attending college. Therefore, Campbell claims a total loss in salary of $270,870. Campbell also claims he was not paid for the last day of work, which is equal to $334. Therefore, the Court finds that Campbell is entitled to a total back pay award of $271,204.

Campbell seeks an award of $50,000 in compensatory damages for pain and

suffering. A successful Title VII plaintiff may be entitled to an award of compensatory damages, including "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(3). However, a plaintiff must show that the defendant's unlawful actions caused his or her emotional distress. *Turic v. Holland Hospitality, Inc*, 85 F.3d 1211, 1215, *citing Carey v. Piphus*, 435 U.S. 247, 263-64 (1978). To show causation, "[a] plaintiff's own testimony, along with the circumstances of a particular case, can suffice to sustain the plaintiff's burden." *Turic.*, 85 F.3d at 1215, *citing Meyers v. City of Cincinnati*, 14 F.3d 1115, 1119 (6th Cir. 1994). "It is well settled that Title VII plaintiffs can prove emotional injury by testimony without medical support." *Id.*, *citing Moody v. Pepsi-Cola Metropolitan Bottling Co.*, 915 F.2d 201, 210 (6th Cir. 1990).

In his Declaration, Campbell states that Smith's discriminatory actions caused him depression. (Campbell Decl. ¶ 31.) Campbell states that he had trouble eating and he contemplated suicide. (Id.) The Court finds that these manifestations of Campbell's mental anguish are sufficient to support an award of $50,000 in compensatory damages.

Campbell also seeks compensation for the $1,000 in relocation costs spent when he was transferred from his RSD position in Ohio to the Trainer position in New York. The Court finds that Campbell is entitled to compensation for the $1,000 spent on relocating to New York.

Campbell seeks an award of $100,000 in punitive damages. To support an award of punitive damages in a Title VII case, the plaintiff must establish that the defendant engaged in a discriminatory practice with malice or reckless indifference to the plaintiff's rights. 42 U.S.C. § 1981a(b)(1). To meet this requirement, a plaintiff must show "more

than merely intentional discrimination." *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 808 (6th Cir. 2004), *citing Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536-37 (1999). Campbell has not shown that TMS acted with malice or reckless indifference. Therefore, Campbell is not entitled to an award of punitive damages.

Campbell seeks attorney fees and costs. Title VII provides that "the court, in its discretion, may allow the prevailing party [in litigation under Title VII] . . . a reasonable attorney's fee . . . as part of the costs." 42 U.S.C. § 2000e-5(k). Campbell has presented the declaration of his attorney, in which his attorney states that he devoted over 350 hours to the case and incurred $2,429.16 in costs. (Doc. 45, Ex. F) The declaration includes a breakdown of these costs. The Court finds that Campbell is entitled to an award of $2,249.16 in costs.

However, the attorney declaration does not include a breakdown of the attorney time spent. Without this information, the Court cannot make a determination regarding the reasonableness of the hours spent. *See United Slate, Tile and Composition Roofers, et al., v. G & M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 502 n. 2. (6th Cir. 1984) (explaining that "the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation.").

As to the hourly rate, Campbell has only provided the declaration of his attorney stating that his hourly rate is $400 per hour. This too is insufficient for a determination regarding the reasonableness of the hourly rate. *See Blum v. Stenson*, 465 U.S. 886, 895, n.11 (1984) (explaining that fee applicant bears the burden to produce evidence, "in

addition to the attorney's own affidavits," that the requested rates are in line with the prevailing community rates). Therefore, while the Court finds that Campbell is entitled to attorney fees, without the necessary information, the Court cannot make a ruling upon the reasonableness of the requested amount.

## III.   CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that:

1. Plaintiff Christopher Campbell's Motion for Summary Judgment (Doc. 45) is hereby **GRANTED in PART and DENIED in PART**;

    a. The Motion is GRANTED as to Campbell's claim for retaliation in violation of Title VII and Ohio law;

    b. The Motion is DENIED as to Campbell's claim for hostile work environment based on race in violation of Title VII and Ohio law; and wrongful termination in violation of public policy;

2. Plaintiff's Motion to Compel Production of Documents (Doc. 41) is **DENIED as MOOT**;

3. Plaintiff is **ORDERED** to file additional support for an award of attorney fees in the amount of $140,000 within **fourteen (14) days** of entry of this Order; and

4. The Court will enter a final judgment after a resolution of the attorney fees award.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　  */s/ Michael R. Barrett*　　　　  
　　　　　　　　　　　　　　　　　　Michael R. Barrett, Judge  
　　　　　　　　　　　　　　　　　　United States District Court